UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RAFIK BOUZEID,           )
                         )
        Petitioner       )
                         )
v.                       )
                         )   Civil Action No. 03-V-12268-JLT
BRUCE CHADBOURNE,[1]     )
                         )
        Respondent       )
                         )

## MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS

Respondent, Bruce Chadbourne (the proper responding party as opposed to Steven Farquharson who was named), hereby submits this memorandum in support of his motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Rafik Bouzeid's Petition for Writ of Habeas Corpus and Request for Stay of Deportation.

---

[1] The Immigration and Naturalization Service of the United States Department of Justice was "abolished" by section 471 of the Homeland Security Act of 2002, Pub. L. 107-296, tit. IV, subtits. D, E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002) ("HSA"). Most of the interior enforcement functions of the former INS were transferred to the Department of Homeland Security ("DHS"), Directorate of Border and Transportation Security, Bureau of Immigration and Customs Enforcement. These changes were effective March 1, 2003. HSA section 1512(c) provides that "pending civil actions shall continue notwithstanding the enactment of this Act or the transfer of an agency to the Department, and in such civil actions, proceedings shall be had, appeals taken, and judgments rendered and enforced in the same manner and with the same effect as if such enactment or transfer had not occurred." In addition, HSA section 1512(d) provides that "[r]eferences relating to an agency that is transferred to the Department in statutes, executive orders, rules, regulations, directives, or delegations of authority that precede such transfer or the effective date of this act shall be deemed to refer, as appropriate, to the Department, to its officers, employees, or agents, or to its corresponding organizational units or functions." As of a DHS restructuring effective June 9, 2003, it is understood at present that the responsive successor official of the Department of Homeland Security in the instant action is Bruce Chadbourne, Interim Field Director for Detention and Removal, Bureau of Immigration and Customs Enforcement in Boston, Massachusetts.

Introduction and Summary of Argument

On November 17, 2003, Petitioner, Rafik Bouzeid ("Bouzeid" or "Petitioner"), filed a Petition for a Writ of Habeas Corpus requesting a stay of deportation as his sole relief.[2] As set forth below, this Petition must be dismissed for a variety of reasons, including: (1) the Petitioner has failed to exhaust administrative remedies, as required, because he did not request a stay of deportation with the BIA, (2) the Petitioner's motion to reopen, to the Board of Immigration Appeals ("BIA"), is untimely, and (3) Petitioner has not shown that the Immigration Judge ("IJ") or the BIA made any colorable claims of legal error in dismissing petitioner's claim, thus depriving this Court of habeas jurisdiction.

Statement of Undisputed Facts

Petitioner is a native and citizen of Lebanon who was admitted to the United States as a nonimmigrant student, under section 101(a)(15) of the Immigration and Nationality Act ("INA"), on September 12, 1988, in Los Angeles, California. Petitioner, however, abandoned that lawful status as a result of his failure to attend school. On or about September 7, 1989, Petitioner filed with the Immigration and Naturalization Service ("INS") a request for asylum in the United States. See Application for Asylum, attached hereto as Exhibit A. It is noteworthy that in his application for asylum, Petitioner stated that he spoke both English and Arabic. Petitioner's request was denied, and deportation proceedings against him were initiated by an administrative

---

[2] On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009, 3009-546 (1996), which brought significant changes to the country's immigration laws. As a result of the IIRIRA, what formerly was called "deportation" is now referred to as "removal." This memorandum may use the terms interchangeably, notably because when Mr. Bouzeid was ordered removed from the country, the operative term was "deportation."

Order to Show Cause and Notice of Hearing, dated March 16, 1990. See Order to Show Cause and Notice of Hearing, attached hereto as Exhibit. B. The Order alleged that Petitioner failed to comply with the conditions of his nonimmigrant status under section 241(a)(9) of the INA. Petitioner was served with the Order to Show Cause by certified mail on March 23, 1990. See Certification of Service, attached hereto as Exhibit C.

The Order Petitioner received, on March 23, 1990, did not specify a hearing date, but a subsequent letter, dated April 16, 1990, informed petitioner that he was scheduled to appear in court on June 12, 1990. The matter was apparently continued until July 25, 1990, when both the petitioner and his counsel, Victor M. Forsley, appeared before Immigration Judge Kenneth A. Bagley. See Transcript of Hearing, July 25, 1990, attached hereto as Exhibit D.

At the July 25, 1990, deportation proceeding, INS counsel requested a continuance in order to amend the allegations stated on the original Order to Show Cause. Petitioner's counsel joined in the continuance request. Judge Bagley ordered the INS to serve Petitioner's counsel with the "additional charge of deportability no later than 10 days before the date of the next Master Calender." The Immigration Judge continued, "this matter's going to be set over to the Mater Calender on October 2, 1990 at 8:30 in the morning." Id. at Exhibit D at p.2.

On October 2, 1990, both Petitioner and his counsel failed to appear at the scheduled deportation proceeding. See Transcript of Hearing, October 2, 1990, attached hereto as Exhibit E. The court proceeded *in absentia* and found, due to Petitioner's failure to attend school and application for asylum, that he had not complied with his nonimmigrant status under which he was admitted into the country. The Immigration Judge, therefore, ordered Petitioner deported from the United States to Lebanon on the basis of the charge contained in the Order to Show

3

Cause. See IJ's Decision, October 2, 1990, attached hereto as Exhibit F.

Petitioner made a timely appeal to the Board of Immigration Appeals ("BIA") on October 16, 1990. The petitioner's appeal was suspended indefinitely in order to allow him to apply for Temporary Protective Status ("TPS"), which was promulgated by the INS and extended to Lebanese nationals. See Board Order to Reopen Proceeding, attached hereto as Exhibit G. Petitioner was granted TPS designation on April 13, 1991. Petitioner retained that TPS designation until it was terminated by the Attorney General, pursuant to section 244A(b)(3) of the INA, on April 9, 1993. Termination of Designation of Lebanon Under Temporary Protected Status Program, 58 Fed. Reg. 7582-02 (Jan. 27, 1993).

On January 23, 1995, the BIA notified petitioner, at the request of the INS, that the prior order suspending his appeal to BIA was vacated, and the proceedings on the appeal were reinstated. See Board Order to Reopen Proceeding, attached hereto as Exhibit G. Petitioner retained a new attorney to proceed with the appeal, James C. Dragon, who entered his Notice of Appearance on behalf of petitioner on April 18, 1995. See Dragon Notice of Appearance, attached hereto as Exhibit H. On October 26, 1995, a per curiam decision of the BIA affirmed the Immigration Judge's October 2, 1990, order to deport the petitioner. See BIA Decision, October 26, 1995, attached hereto as Exhibit I. Subsequently, arrangements were made for petitioner to be deported on December 28, 1995.

On December 28, 1995, petitioner filed a Motion to Reopen his deportation proceedings for consideration of an application for suspension of deportation. See Application for Stay of Deportation, filed December 28, 1995, attached hereto as Exhibit J. Petitioner cited new evidence; namely an affidavit from his former attorney, Mr. Forsley, in support of this motion.

Petitioner asserted his case should be reconsidered because Mr. Forsley, through the affidavit, claimed full responsibility (for the first time and more than five years later) for Petitioner's failure to appear in court on October 2, 1990. In the affidavit, Mr. Forsley stated he anticipated receiving written notice with respect to the October 2, 1990 hearing date, although none was ever received. In addition, he asserted that he informed Petitioner they would begin final preparation for the hearing once he received written confirmation of the hearing date. See Affidavit Victor M. Forsley, attached hereto as Exhibit K.

On March 19, 1997, petitioner's Motion to Reopen was denied in a per curiam decision of the BIA. See Board Decision, March 19, 1997, attached hereto as Exhibit L. The BIA denied Petitioner's motion because he was served with the original Order to Show Cause prior to his acquisition of the seven years' continuous physical presence required for statutory eligibility for suspension of deportation. As a result, the court determined, petitioner's application for suspension was unwarranted. Following that decision, on October 28, 1997, petitioner applied for another Stay of Deportation. See Response to Application for Stay, October 31, 1997, attached hereto as Exhibit M. In a letter dated October 31, 1997, this request was denied due to the outstanding Warrant of Deportation issued against the petitioner. Id.

Despite the Warrant of Deportation issued against the petitioner, he remained in the United States, illegally, until he was arrested on charges of theft/shoplifting on July 17, 2003, by an officer of the Boston Police Department. See Report of Investigation, attached hereto as Exhibit N. The Department of Homeland Security has since represented to the Court that it will not execute the deportation order before December 18, 2003. Petitioner has filed this habeas corpus petition seeking a stay of deportation pending the adjudication of his currently pending

Motion to Reopen at the BIA. This marks petitioner's second attempt at such a motion.

Argument

A.  PETITIONER'S CLAIM MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Petitioner requests the Court to stay his removal from the United States pending its decision in this matter. However, 8 U.S.C. § 1105a(c), applicable because of the date of Petitioner's deportation order, provides that "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available as of right under the immigration laws and regulations. . ." The First Circuit has held that failure to pursue and exhaust available review operates as a waiver of habeas review. Mattis v. Reno, et al., 212 F.3d 31, 41 (1st Cir. 2000) ("[t]raditional rules regarding exhaustion and waiver [which] govern on direct review of BIA final orders . . . . [also] hold on habeas review, which we have suggested is less broad than direct review."); Groccia v. Reno, et al., 234 F.3d 758, 762 (1st Cir. 2000) ("Conventional forfeiture rules pertain in habeas cases."). Moreover, in Sousa v. INS, 226 F.3d 28 (1st Cir. 2000), the First Circuit in discussing the exhaustion requirement of INA section 242(d) observed that "[w]hatever our own views, we are bound by precedent to apply the INA exhaustion requirement in a more draconian fashion." at 31. The Sousa court remarked that INA section 242(d) merely restates the prior exhaustion statute, former INA section 106(c), and that "most circuits, including this one, have described section 106(c) as a jurisdictional bar where an issue sought to be raised in court was not raised in the agency." Id.

Petitioner has failed to request a stay of deportation with the BIA, an administrative remedy available to him as of right, and instead has petitioned the Court for habeas relief. Therefore, Petitioner has waived his right to habeas review, and his request for a stay of

6

deportation should be dismissed.

B.  THE PETITION MUST BE DISMISSED BECAUSE THE PETITIONER'S MOTION TO REOPEN TO THE BIA IS UNTIMELY.

The plain language of 8 C.F.R. § 1003.2(c)(2) provides that "a party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later."

Under any analysis, Petitioner's motion was made well beyond the time constraints set forth by § 1003.2(c)(2). If the BIA's October 26, 1995 decision, affirming the IJ's *in absentia* deportation order, is considered the final administrative decision on the matter, then Petitioner had until September 30, 1996 to bring a motion to reopen. If the BIA's March 17, 1997 decision, denying the Petitioner's previous motion to reopen the case, is considered the final administrative decision on the matter, then Petitioner had 90 days following that decision to bring this motion to reopen (until about June 1997). Under either circumstance, Petitioner's motion to reopen, filed sometime after his July 17, 2003 arrest for theft/shoplifting, was made at least 6 years beyond the statutorily mandated time constraints.

The time limits set forth by § 1003.2(c)(2) are subject to certain exceptions stated in § 1003.2(c)(3), for motions to reopen filed pursuant to § 1003.23(b)(4)(iii)(A)(1) and § 1003.23(b)(4)(iii)(A)(2). As explained below, neither exception applies.

The first exception, contained in 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1), provides that an order entered *in absentia* in deportation proceedings may be rescinded only upon a motion to

reopen filed "[w]ithin 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances beyond the control of the alien." Section 1003.23(b)(4)(iii)(A)(1) further defines "exceptional circumstances" as serious illness of the alien, serious illness of death of an immediate relative, but not including "less compelling circumstances." Although Petitioner does not explicitly claim that his failure to appear was due to "exceptional circumstances," an application of the § 1003.23(b)(4)(iii)(A)(1) exception yields the same result; Petitioner's motion has been made well-beyond the statutory prescribed time period. If the BIA's October 26, 1995 decision is considered the final administrative decision on the matter, then Petitioner had until late March of 1996 to bring his motion to reopen. Or, if the BIA's March 17, 1997 decision is considered the final administrative decision on the matter, then Petitioner had 180 days following that decision, until about September 1997, to bring a motion to reopen. Either way, Petitioner's motion was made at least 6 years beyond the statutorily mandated time constraints.

The other exception, contained in § 1003.23(b)(4)(iii)(A)(2), provides that an order entered *in absentia* in deportation proceedings may be rescinded only upon a motion to reopen filed "[a]t any time if the alien demonstrates that he or she did not receive notice." Notice is further defined in 8 U.S.C. § 1229a(b)(7) to include "oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings."

Although the transcript clearly indicates that Petitioner was present with counsel on July 25, 1990, when the IJ informed him of the October 2, 1990 hearing date, he asserts that he did not have notice of that hearing date. Petitioner's claim centers on his assertions that he was unable to speak or understand English at the time of the July 25, 1990 hearing. In Petitioner's

application for asylum, dated September 1989, almost eleven months prior to the hearing, he indicated that he was able to speak English. In an affidavit of Petitioner's former attorney, Mr. Forsley, he indicated that both he and the Petitioner were informed of the October 2, 1990 hearing date, and that their failure to appear was due to his anticipation of written notice of the hearing date. Nothing in the record supports Petitioner's claim he did not know of the October 2, 1990 hearing date.

C. PETITIONER'S CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THE COURT'S SCOPE OF REVIEW IS LIMITED TO COLORABLE CLAIMS OF LEGAL ERROR, WHICH PETITIONER FAILS TO SHOW, THUS DEPRIVING THIS COURT OF JURISDICTION.

Even if this Court does have habeas jurisdiction in immigration matters, its review is limited to colorable claims of legal error, not reviewing issues of fact, or the discretionary decisions of the IJ or BIA. The Petition should be dismissed because Petitioner has made no showing of any colorable claims of legal error.

1. This Court Is Limited to Reviewing Colorable Claims Of Legal Error.

In INS v. St. Cyr, 533 U.S. 289, 290 (2001), the Supreme Court observed that, "in the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings." The scope of a court's habeas review is much narrower than the judicial review normally available on direct appeal from an agency decision. Eugene v. INS, 2003 WL 40509, *2 (D.Mass. 2003). See also Mahadeo v. Reno, 226 F.3d 3, 12 (1st Cir. 2000); Goncalves v. Reno, 144 F.3d 110, 125 (1st Cir. 1998). A court's habeas jurisdiction does not extend to review of discretionary determinations of the IJ and BIA. Eugene, 2003 WL 40509, *2. Instead, a court may only review petitions that are based on "colorable claims of legal error, that is, colorable

claims that an alien's statutory or constitutional rights have been violated." Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002).

In St. Cyr, the Supreme Court, drew a sharp distinction between review of cases presenting pure law questions, and review of other, fact-bound, or discretionary cases. The Court recognized that:

> [St. Cyr's] application for a writ of habeas corpus raises a pure question of law. He does not dispute any of the facts that establish his deportability or the conclusion that he is deportable. Nor does he contend that he would have any right to have an unfavorable exercise of the Attorney General's discretion reviewed in a judicial forum. Rather, he contests the Attorney General's conclusion that, as a matter of statutory interpretation, he is not eligible for discretionary relief.

Id. at 298 (emphasis added).

The First Circuit confirmed in Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002), its understanding of the Supreme Court's St. Cyr ruling that "[f]ederal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated." See also Reid v. INS, 203 F.Supp.2d 47 (D. Mass. 2002)(same); Sulaiman v. Attorney General, et al., 212 F.Supp.2d 413, 416 (E.D.Pa. 2002) ("scope of review of [deportation orders] is limited to questions of law."). In Lopez v. Ashcroft, 267 F.Supp. 2d 150, 153 (D. Mass. 2003), Chief Judge Young followed this reasoning in holding that where a "fact-intensive review" of a legal determination "demands an extensive factual inquiry," the district court does not possess habeas jurisdiction.

Several other circuit courts have held that such habeas corpus jurisdiction in the federal

10

courts as may exist to review removal orders does not reach factual or discretionary determinations. See Sol v. INS, 274 F.3d 648, 650 (2d Cir. 2001) (affirming dismissal of a habeas corpus petition seeking to challenge a discretionary determination of the INS rather than a decision "in violation of the Constitution or laws or treaties of the United States"). The Second Circuit in Sol also observed that several other circuit courts had come to the same conclusion. Id. at 650, citing to Finlay v. INS, 210 F.3d 556, 557 (5th Cir. 2000), Bowrin v. USINS, 194 F.3d 483, 490 (4th Cir. 1999), and Catney v. INS, 178 F.3d 190, 195 (3d Cir. 1999). See also Gutierrez-Chavez v. INS, 298 F.3d 824, 827 (9th Cir. 2002) ("[28 U.S.C.] § 2241 does not say that habeas is available to challenge purely discretionary (yet arguably unwise) decisions made by the executive branch that do not involve violations of the Constitution or federal law").

This Court therefore has subject matter jurisdiction over "colorable claims of legal error" or "pure questions of law" relating to a final order of removal in a habeas petition, assuming review is not otherwise barred. However, as detailed below, Petitioner fails to state any colorable claim of legal error in the decision of the Immigration Judge or BIA ordering his removal.

2. Petitioner Has Failed To State Any Claim Of Legal Error Because His Claim Of Ineffective Assistance Of Counsel Requires A Factual Inquiry.

Petitioner asserts that the deportation order issued against him is unjust due to the failures of both of his former attorneys, which, he concludes, amounted to ineffective assistance of counsel. This is clearly an intensely fact-bound determination. Petitioner claims he was absent from the October 2, 1990 hearing because of his inability to speak English at the time, and due to his attorney, Mr. Forsley's, lack of proper communication and understanding with respect to the date of the hearing. In addition, Petitioner asserts that his second attorney, Mr. Dragon, provided

11

incompetent representation with respect to his appeal to the BIA, due to a conflict of interest resulting from his friendship with Mr. Forlsey. In support of this claim, Petitioner cites Mr. Dragon's failure to inform the BIA that, at the time of the October 2, 1990 hearing, he was unable to speak any English. Petitioner claims that Mr. Dragon purposefully omitted this information to protect the reputation of his "friend," Mr. Forsley.

In light of St. Cyr and Carranza, Petitioner's ineffective assistance of counsel allegations clearly present factual issues, and do not constitute "colorable claims of legal error" or "pure questions of law" appropriate for habeas corpus review. Petitioner's claims require a fact-intensive review, which, as illustrated in Lopez, is inappropriate for habeas review. It has previously been determined that a habeas petition, based on a claim of ineffective assistance of counsel, "far exceeds the scope of this Court's jurisdiction over pure questions of law as articulated by the Supreme Court in St. Cyr." Reyna-Guevara v. Pasquarell, 2002 WL 1821619, *5 (W.D. Tex. 2002).

Because Petitioner's ineffective assistance of counsel claim requires a factual inquiry, he has failed to state any claim of legal error and, therefore, his habeas petition must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

3. Petitioner's Claim Lacks Merit And Should Be Dismissed Regardless Of Whether It Raises A Question Of Legal Error Appropriate For Habeas Review.

Even accepting the claim that an error of counsel was responsible for Petitioner's failure to appear, there is no denial of due process. The First Circuit has stated that "[a]n *in absentia* deportation is legitimate if the alien had a reasonable opportunity to be present and failed to provide reasonable cause for his absence." Thomas v. I.N.S., 976 F.2d 786, 789 (1st Cir. 1992). Petitioner's claim, ineffective assistance of counsel, does not amount to "reasonable cause"

legitimizing his absence from the October 2, 1990 hearing. The Court of Appeals has previously articulated that notice to an attorney is sufficient to satisfy the "reasonable opportunity" requirement, as long as the attorney was authorized to act on the alien's behalf. Sewak v. I.N.S., 900 F.2d 667 (3rd Cir. 1990). Mr. Forsley was present with, and on behalf of, the Petitioner on July 25, 1990, when the IJ notified them that the deportation proceedings would continue on October 2, 1990. Therefore, Petitioner was given a reasonable opportunity to appear at the hearing, and the resulting *in absentia* hearing was legitimately conducted.

The First Circuit has articulated that "attorney negligence creates a constitutional flaw only if it is extreme *and* there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Hernandez v. Reno, 238 F.3d 50, 56 (1st Cir. 2001). In addition, the constitutional right to civil due process "does not include an opportunity to tie up deportation proceedings in knots through collateral attacks on defects that would not plausibly have altered the result." Hernandez, 238 F.3d at 57.

Petitioner has not demonstrated that he would have been granted any relief from the deportation proceeding had he been present. Moreover, in Hernandez the court addressed the fact that Hernandez waited for an extended period to challenge the effectiveness of prior counsel. The Hernandez court said it was "hard to stomach" the idea that Hernandez could "sit on his hands" for years and then say he was unconstitutionally denied an opportunity to pursue an appeal from the denial of waiver." Hernandez, 238 F.3d at 57. In addition, the Court said "it would seem that Hernandez had some duty – as a condition of a successful due process claim – to monitor his lawyer's actions and assure that his appeal was being pursued." Id.

Even accepting arguendo Petitioner's account that he did not learn of the developments of

13

his case until May 2000, he has still been 'sitting on his hands' too long, and only now, upon an arrest for shoplifting and at the time of execution of his deportation order, does he raise any claim. The First Circuit has characterized a request for a judicial stay to pursue an untimely motion to reopen at the BIA, in connection with a request to the Federal courts to vacate the order, as "not due process but overkill of the kind that has lead Congress increasingly to limit judicial review and to abolish waivers even for those who may fully deserve them." Hernandez, 238 F.3d at 57. See also Jobe v. I.N.S., 238 F.3d 96 (1st Cir. 2001) (alien's due process argument, based on attorney's ineffectiveness of counsel, was undermined by alien's lack of diligence in pursuing available remedies).

In conclusion, Petitioner's claims do not amount to a due process violation for which he is entitled relief. Petitioner was given a reasonable opportunity to appear at the deportation hearing when he and his attorney were orally notified of the October 2, 1990 hearing date. Although Petitioner faults his attorney for his failure to appear, Petitioner has not shown that he would have been granted relief at the hearing had he been present. In addition, his failure to diligently pursue a due process claim undermines the validity of this recent attempt at securing relief. For these reasons, and the reasons previously stated, this Court should therefore decline to issue any stay of removal.

## Conclusion

For the forgoing reasons, Respondent requests that the Court deny all relief sought by the Petition and dismiss the Petition.

                                                Respectfully submitted,

                                                BRUCE CHADBOURNE

                                                By his attorney,

                                                MICHAEL J. SULLIVAN
                                                UNITED STATES ATTORNEY

By: *[signature]* for JMS
                                            Jeremy M. Sternberg
                                            Assistant U.S. Attorney
                                            1 Courthouse Way
                                            Suite 9200
                                            Boston, MA 02210
                                            (617) 748-3142

I hereby certify that a true copy of the above document was served upon [each] party appearing [pro se and] the attorney of record for each other party by mail on 1/21/04

*[signature]*
Assistant U.S. Attorney